IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| GILBARCO INC., | ) | Civil Action No. 1:21-cv-46 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| TEAMSTERS LOCAL UNION NO. 391, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Gilbarco Inc., Plaintiff, alleging and complaining as follows:

## INTRODUCTION

Plaintiff Gilbarco Inc. ("Gilbarco") brings the following Complaint against Defendant Teamsters Local Union No. 391 ("Defendant" or "the Union"), asking this Court to vacate the decision of the Piedmont Grievance Committee ("PGC"), which barred Gilbarco from participating in the October 21, 2020 PGC hearing. The PGC hearing was convened for the purpose of deciding whether four (4) former employees of Gilbarco had been discharged for just cause. The PGC, however, disqualified Gilbarco from all participation in the PGC hearing, barring Gilbarco from presenting any witnesses or evidence, cross-examining any of the Union's witnesses, or making any arguments in opposition to the Union's grievances – in short, Gilbarco was deprived of its right to a fair and full hearing of the grievances. As a result, the PGC granted the Union's grievances and required Gilbarco to reinstate the four (4) employees, all of whom had been properly

discharged for just cause. The PGC exceeded the scope of it authority, acted in an arbitrary, capricious, and discriminatory manner, and deprived Gilbarco of the opportunity to present evidence material to the grievances.

## JURISDICTION AND VENUE

1. This action arises under Section 301 of the Labor Management Relations Act of 1959, 29 U.S.C. § 185.

2. This Court has jurisdiction over Gilbarco's claim for vacatur of the PGC's decision pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

3. This Court also has supplemental jurisdiction over Gilbarco's claim under N.C. Gen. Stat. §§ 1-569.23 and 1-569.25 pursuant to 28 U.S.C. § 1367.

## PARTIES

4. Gilbarco is a corporation organized under the laws of the state of Delaware, with its headquarters and one of its manufacturing and development facilities located in Greensboro, North Carolina. Gilbarco is engaged in the business of supplying fuel dispensers, point of sales systems, payment systems, and support services for fueling stations and convenience stores.

5. Gilbarco is an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 152(2). Gilbarco is engaged in commerce within the meaning of Section 2(6) of the NLRA, 29 U.S.C. § 152(6).

6. Defendant is an unincorporated labor union with its principal place of business in Colfax, North Carolina. Defendant has numerous members who reside in the

state of North Carolina, including locations within the Greensboro Division of the United States District Court for the Middle District of North Carolina. Defendant is a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5).

## FACTS

**The CBA and the PGC By-Laws Set Forth the Procedures for Hearing Grievances**

7. Gilbarco and the Union are parties to a collective bargaining agreement ("CBA") effective from July 22, 2019 to July 23, 2022. Attached as **Exhibit A** is a true and correct copy of excerpts from the CBA which are relevant to this controversy. Under the CBA, the Union is the sole collective bargaining agent for "all production and maintenance employees and truck drivers at [Gilbarco's] Greensboro, North Carolina plant." (Exhibit A, at § 1.1.)

8. Article 23 of the CBA, entitled "Discharge or Other Disciplinary Action," provides that employees shall not be disciplined except for just cause. If the Union or an employee believes that the employee was not disciplined or discharged for just cause, the discipline or discharge may be made the subject of a grievance under the grievance procedure provided in Article 22 of the CBA. (Exhibit A, at § 23.1.)

9. Article 22 of the CBA, entitled "Grievance and Arbitration Procedure," provides a four-step grievance process for reviewing a Union employee's discipline or discharge. Step 4 of this procedure provides that the parties will refer certain grievances to the PGC in lieu of submitting the matter to arbitration. The parties will only submit disciplinary cases to the PGC; the PGC will not hear cases involving issues of contract

3

interpretation or arbitrability, or issues which are also the subject of an administrative charge or court case, unless by mutual agreement of the parties. (Exhibit A, at § 22.2.)

10. The PGC's Rules of Procedure are set forth fully and exclusively in a written document entitled "Piedmont Grievance Committee By-Laws" (the "By-Laws"). No other published rules or procedures exist for the PGC.

11. Article VII of the By-Laws is entitled "Hearings." Article VII(A) provides that "[i]n the hearing of a case either party may present any evidence bearing on the facts of a particular case, and may present testimony of witnesses either in person or by sworn affidavit/notarized statement."

12. Article I(E) of the By-Laws provides that "Local Unions and Employers who are current on their payments for the required annual deposit and other fees due under Article V or Article IX will be permitted to present and/or hear cases before the Committee." Article I(E) further provides that:

> If the annual dues and fees have not been paid within ninety (90) days of the date of the invoice for such dues or fees, the Committee may hear any case scheduled[,] but the party owing any such dues or fees shall not be allowed to participate in the hearing.

13. Article V of the By-Laws, titled "Postponement of Cases," provides for the payment of certain fees in the event that a grievance to be heard before the PGC is postponed.

14. Article IX, titled "Fees," provides for the payment of (1) annual dues in the amount of $100.00; and (2) a charge of $100.00 per case presented to the PGC, to be paid by the losing party.

**The PGC Bars Gilbarco from Participating in the October 21, 2020 Hearing**

15. On October 21, 2020, the PGC was scheduled to hear four (4) grievances, each involving the discharge of an employee from Gilbarco's plant in Greensboro, North Carolina:

   a. Linda Clyburn (Case No. 45-P-20) was discharged on June 2, 2020 for insubordination;

   b. Kameron Graham (Case No. 52-P-20) was discharged on June 19, 2020 for theft of time and falsifying hours of work;

   c. Alisha Neal (Case No. 53-P-20) was discharged on July 14, 2020 for violation of Gilbarco's attendance policy; and

   d. Tiffany Williams (Case No. 58-P-20) was discharged on September 9, 2020 for willfully making false statements.

16. At the beginning of the PGC hearing on October 21, 2020, the Union's representative, Wayne Gibbs ("Gibbs"), called for a Point of Order. Gibbs maintained that under Article I(E) of the By-Laws, Gilbarco was not eligible to participate in the PGC hearing in connection with any of the pending grievances because Gilbarco had failed to pay outstanding invoices for transcripts of prior PGC hearings. Specifically, Gibbs relied on an invoice dated July 9, 2019 (Invoice No. 20-P-19) and an invoice dated June 26, 2020

(Invoice No. 15-P-20), both for transcripts of PCG hearings related to the discharge of two former employees of Gilbarco. Gibbs represented to the PGC that the payment for those invoices had not been received by the PGC's office in Kernersville, North Carolina.

17. Gilbarco's representative at the hearing, Benita McRae ("McRae") vigorously disputed Gibbs' claim of non-payment of the transcript fees. McRae also pointed out that under the By-Laws, Gilbarco should be able to participate in the hearing because Gilbarco had not failed to pay its annual dues or any fees for postponed cases.

18. After calling Gilbarco's accounts payable department, McRae obtained screenshots of Gilbarco's business records, which established that Gilbarco had paid three (3) invoices from the PGC on October 15, 2020, which was six (6) days before the hearing. These business records are kept in the regular course of Gilbarco's business and were obtained by McRae from Mary Landsberg, an employee in Gilbarco's Accounts Payable Department. McRae showed the screenshots to PGC Co-Chair Ben Nichols ("Nichols").

19. The transcript invoices paid by Gilbarco on October 15, 2020 were:

| Invoice No. | Date | Amount |
|---|---|---|
| 20-P-19 | July 9, 2019 | $165.40 |
| 15-P-20 | June 26, 2020 | $456.10 |
| 41-P-18 | August 5, 2020 | $560.70 |
| **Total Payment** | | **$1,182.20** |

McRae had authorized payment for all three (3) invoices on October 6, 2020.

6

Case 1:21-cv-00046   Document 1   Filed 01/15/21   Page 6 of 13

20. Despite the documentary evidence provided by McRae that these transcript charges had been paid and the payments had been mailed to the PGC office on October 15, 2020, the PGC instead accepted the unsupported verbal representation from Gibbs that the PGC had not received the payments in the mail and upheld Gibbs' Point of Order.

21. As a result, the PGC barred Gilbarco from participating in the hearing. Gilbarco was barred from presenting any evidence, from cross-examining the Union's witnesses, and from making any arguments in opposition to the Union's cases involving the above-referenced grievances. The PGC granted the Union's grievances and required Gilbarco to reinstate the four (4) employees, who had been properly discharged for just cause.

22. Gilbarco submitted a motion to the PGC on October 30, 2020, asking that the PGC reconsider and reverse its ruling barring Gilbarco from presenting evidence on the four (4) grievances at the October 21, 2020 hearing and that the grievances be remanded for a hearing before a new PGC panel; or alternatively, that an arbitrator be appointed to hear the merits of the grievances.

23. Attached as **Exhibit B** is a true and correct copy of the motion submitted to the PGC on October 30, 2020.

24. On January 8, 2021, the acting Company Co-Chairman of the PGC, Thomas L. Houvouras ("Houvouras"), sent a letter in response to the motion stating only that the decisions in the four (4) grievances were final and binding on all parties. The one-sentence letter provided no reason, explanation, or rationale for the PGC's decision.

25. Attached as **Exhibit C** is a true and correct copy of Houvouras' letter in response to Gilbarco's motion.

26. The PGC exceeded its authority as set forth in the By-Laws by barring Gilbarco from participating in the October 21, 2020 hearing on the basis that Gilbarco had failed to pay transcript fees. The PGC refused to hear evidence that was pertinent and material to the controversy, caused prejudice to Gilbarco, and deprived Gilbarco of its right to a full and fair hearing. Accordingly, the PGC's decision barring Gilbarco from participating in the October 21, 2020 hearing should be vacated.

## FIRST CAUSE OF ACTION
### (Vacatur of the PGC's Decision Under 29 U.S.C. § 185)

27. Gilbarco incorporates all previous allegations in the Complaint as if fully set forth herein.

28. The Court should vacate the PGC's decision barring Gilbarco from participating in the October 21, 2020 hearing for the following reasons:

**The PGC By-Laws Do Not Authorize Barring a Party from Participating in a Hearing for Failure to Pay Transcript Fees**

29. Article I(E) of the By-Laws clearly provides that "Local Unions and Employers who are current on their payments for the required annual deposit *and other fees due under Article V or Article IX* will be permitted to present and/or hear cases before the Committee" (emphasis added).

30. The only fees described in Articles V and IX are fees associated with the postponement of cases before the PGC, annual dues, and charges for cases presented to the

8

PGC to be paid by the losing party. There were no allegations or contentions by the Union or the PGC that Gilbarco failed to pay any fees related to postponing or losing a case before the PGC, or that Gilbarco failed to pay its annual dues.

31. Critically, neither Articles V or IX describe or discuss fees for transcripts; and nowhere in the By-Laws is there any reference to consequences for a party's failure to pay transcript fees.

32. According to the plain language of the By-Laws, the exclusionary provision of Article I(E) does <u>not</u> apply to any alleged failure to pay transcript fees. Because Gilbarco was current on all dues and fees required under Article V and Article IX, the By-Laws give Gilbarco the unfettered right to participate in the PGC hearing.

33. The PGC's decision to bar Gilbarco from participating in the hearing was in excess of its authority under the By-Laws and deprived Gilbarco of its right to a full and fair hearing.

**Gilbarco Presented Credible Evidence of Payment of the Transcript Fees Prior to the Hearing**

34. The PGC also improperly credited Gibbs' unsupported testimony regarding alleged non-payment of transcript fees. Gibbs verbally represented that the PGC office had not yet received any payment for the July 9, 2019 and June 26, 2020 invoices, but did not provide any support for his statement in the form of an affidavit, statement, or other supporting proof from the PGC office.

35. Furthermore, Gibbs' statements were refuted by McRae, who submitted screenshots of Gilbarco's accounting records showing that all outstanding invoices for

9

transcripts were mailed to the PGC on October 15, 2020. This concrete, documentary evidence is proof of Gilbarco's payment made prior to the PGC hearing on October 21, 2020. Further, under long-standing legal principles, there is a presumption that materials which are placed in the U.S. Mail are deemed received after three (3) days. This three (3) day rule means there is a legal presumption that Gilbarco's check for payment of the three (3) outstanding invoices is presumed to have been received by the PGC on October 20, 2020.

36. The PGC's ruling was against the greater weight of the evidence and constitutes arbitrary, capricious, and discriminatory actions against Gilbarco.

**The Union Retaliated Against Gilbarco and Waived Its Right to Object to Gilbarco's Participation Based on Allegedly Overdue Transcript Fees**

37. The Union's Point of Order was a calculated retaliatory action against Gilbarco, because Gilbarco would not agree to mediate the discipline for Gilbarco's former employees Tiffany Williams and Alisha Neal.

38. Following a grievance meeting conducted on September 24, 2020 in accordance with the third step of the grievance process outlined in the CBA, Gibbs told McRae that he could not win the cases scheduled to be heard by the PGC on October 21, 2020. Gibbs, without providing any reasonable justification, asked McRae to reduce the discipline for Tiffany Williams and Alisha Neal and return them to work, but McRae refused the proposed change in disciplinary level.

39. Immediately following the September 24, 2020 grievance meeting, McRae received the three (3) invoices from the Union, which McRae approved for payment on

October 6, 2020 and the payments for which were mailed to the PGC office on October 15, 2020.

40. At no time prior to the October 21, 2020 hearing did Gibbs give any indication that Gilbarco was more than ninety (90) days late in paying any invoices from the PGC.

41. Gilbarco participated in two prior PGC hearings, one in December 2019 and one in August 2020. At neither hearing did the Union raise a Point of Order, nor did the PGC bar Gilbarco from presenting evidence, due to the alleged overdue payment for the July 6, 2019 transcript invoice.

42. By failing to raise the alleged overdue transcript fees in December 2019 and in August 2020, the Union has waived its right to rely on this issue as a means of preventing Gilbarco from presenting evidence regarding the four (4) grievances heard before the PGC on October 21, 2020.

**The PGC's Refusal to Hear Relevant Evidence Deprived Gilbarco of a Full and Fair Hearing**

43. In accordance with Article VII(A) of the By-Laws, Gilbarco served the Union with a copy of the statements and documents it intended to rely on at the October 21, 2020 PGC hearing in the above-referenced grievances.

44. The information contained in the above-referenced statements and documents demonstrate that there was just cause for the discharge of each grievant. If Gilbarco had been permitted to participate in the PGC hearing, to present its witnesses and

11

its evidence, and to cross-examine the Union's witnesses, Gilbarco would have demonstrated that just cause exists for the termination of each grievant.

45. The PGC refused to hear evidence that was relevant, pertinent, and material to the controversy. The PGC's decision to bar Gilbarco from presenting evidence at the October 21, 2020 hearing caused prejudice to Gilbarco and wrongly deprived Gilbarco of its right to a full and fair hearing.

## SECOND CAUSE OF ACTION
### (Vacatur of the PGC's Decision and Attorney's Fees Under N.C. Gen. Stat. §§ 1-569.23 and 1-569.25)

46. Gilbarco incorporates all previous allegations in the Complaint as if fully set forth herein.

47. As set forth above, the PGC refused to consider evidence material to the controversy in violation of fundamental standards of due process, which substantially prejudiced Gilbarco's right to a full and fair hearing and warrants vacating the PGC's decision barring Gilbarco from participating at the hearing under N.C. Gen. Stat. § 1-569.23.

48. Gilbarco is entitled to an award of its reasonable attorneys' fees and litigation expenses incurred in bringing this action as provided for in N.C. Gen. Stat. § 1-569.25.

## PRAYER FOR RELIEF

WHEREFORE, Gilbarco prays that judgment be entered in its favor and that it have and recover the following relief:

1. An order vacating and nullifying the PGC decision referenced herein;

2. Gilbarco's attorneys' fees and expenses incurred in bringing this action pursuant to N.C. Gen. Stat. § 1-569.25; and

3. Such other relief as may be available and as the court deems appropriate.

Respectfully submitted, this the 15th day of January, 2021.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ James M. Powell*
James M. Powell (N.C. State Bar No. 12521)
Jimmy.Powell@wbd-us.com
300 N. Greene Street, Suite 1900
Greensboro, North Carolina 27401
(336) 574-8081

Sarah R. Cansler (N.C. State Bar No. 52058)
Sarah.Cansler@wbd-us.com
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2188

*Attorneys for Plaintiff Gilbarco Inc.*